UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.S. *et al.*,<br>       Plaintiffs,<br>    v.<br>DISTRICT OF COLUMBIA,<br>       Defendant. | Civil Action No. 21-0293 (CKK) |

**MEMORANDUM OPINION**
(April 15, 2021)

Plaintiffs J.S., a student eligible for special education services in the District of Columbia, and his parents, A.D. and T.S. ("Plaintiffs") seek judicial review of a Hearing Officer's Determination ("HOD") following an administrative due process hearing under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. *See* Compl., ECF No. 1. The parties are presently before the Court on Plaintiffs' [9] Motion for Preliminary Injunction seeking a "stay-put" order pursuant to 20 U.S.C. § 1415(j), requiring Defendant, the District of Columbia ("Defendant" or "the District") to maintain and fund J.S.'s placement at the Innercept Academy, a private residential program in Coeur d'Alene, Idaho, pending a judicial determination of Plaintiffs' challenge to the District's proposed placement at the Hughes Center, a private residential treatment program in Danville, Virginia. Upon consideration of the parties' pleadings,[1] the relevant legal authorities, and the record as a whole, the Court shall **DENY** Plaintiffs' Motion for Preliminary Injunction.

---

[1] The Court's consideration has focused on the following materials: Plaintiffs' Motion for Preliminary Injunction ("Pls.' Mot."), ECF No. 9; Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction ("Def.'s Opp'n"), ECF No. 15; and Plaintiffs' Reply to Defendant's Opposition to Motion for Preliminary Injunction ("Pls.' Reply"), ECF No. 18. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

## I. BACKGROUND

### A. Statutory Framework

The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Once a child is identified as disabled, the school district must convene a meeting of a multi-disciplinary team to develop an individualized education program ("IEP") for the student. *See* § 1414. The IEP must include a variety of information, including the child's current levels of academic achievement and functional performance, measurable annual goals, how the child's progress towards the goals will be measured, and the special education and related services to be provided to the child. § 1414(d)(1)(A)(I). The IEP must be formulated in accordance with the terms of the IDEA and "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 204 (1982).

Once the IEP is developed, the school system must provide an appropriate educational placement that comports with the IEP. *Alston v. Dist. of Columbia*, 439 F. Supp. 2d 86, 90 (D.D.C. 2006). "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." *Dist. of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 80–81 (D.D.C. 2012) (quoting *Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005)). However, a parent or guardian who "unilaterally places a child with a disability in a private school," without consent of the school system, "does so at his or her own risk." *Florence Cty. Sch.*

*Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (quoting *School Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 372 (1985)).

The IDEA guarantees parents of disabled children the opportunity to participate in the evaluation and educational placement process. *See* § 1415(b)(1). If the parent of a child receiving services pursuant to the IDEA believes his or her child's IEP or school placement is inadequate, the parent may file a "due process complaint." *See* § 1415(b)(7)(A); § 1415(k)(3). The IDEA further provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]" § 1415(j). Known as the "stay-put provision," this section mandates that once a parent files a due process complaint, "the child shall remain in the interim alternative educational setting pending the decision of the hearing officer" unless "the parent and the State or local educational agency agree otherwise." § 1415(k)(4); *accord* 34 C.F.R. § 300.518(a).

**B. Factual Background**

J.S. is an eighteen-year-old student who has been diagnosed with Autism Spectrum Disorder, Attention Deficit Hyperactivity Disorder, Combined Type, Bipolar Disorder, and Anxiety Disorder, as well as specific learning disabilities in reading and written expression. Compl. ¶ 7. J.S. resides in the District of Columbia and has been found eligible for special educations services by the District of Columbia Public Schools ("DCPS"). *Id.* ¶ 8. He currently attends the Innercept Academy in Coeur d'Alene, Idaho. *Id.* ¶ 6.

After difficulties during the 2019–2020 school year—including two hospitalizations due to mental health challenges and the use of online learning prompted by the COVID-19 pandemic, *see id.* ¶¶ 25–32, 40—J.S.'s parents sought to place J.S. in a full-time residential program. *See*

3

Hearing Officer Determination ("HOD") ¶¶ 8–9, A.R. 661, ECF No. 12-2. On May 14, 2020, an IEP team held a meeting in which J.S.'s mother and counsel participated. HOD ¶¶ 8–9, A.R. 661. The IEP team agreed that J.S. required 26.5 hours per week of Specialized Instruction outside the general education setting and 240 minutes per month of Behavioral Support Services. HOD ¶ 8, A.R. 661; May 2020 IEP, A.R. 149, ECF No. 10-2. The IEP does not provide for group therapy services or Extended School Year ("ESY") services. HOD ¶ 8; May 2020 IEP, A.R. 153. At the IEP meeting, J.S.'s counsel requested consideration of a full-time residential placement for J.S., at a school with a psychiatrist on staff. HOD ¶ 9, A.R. 661; Notes from May 2020 IEP Meeting, A.R. 162. The IEP team agreed to make a referral to the Office of the State Superintendent of Education ("OSSE") for a change-in-placement review to consider a residential placement. HOD ¶ 9, A.R. 661.

On June 15, 2020, Plaintiffs informed DCPS that J.S. had been accepted to Innercept Academy for the 2020–2021 school year and requested that DCPS place J.S. there for the academic year. HOD ¶ 13, A.R. 663 (citing June 15, 2020 Correspondence, A.R. 192, ECF No. 10-6). Plaintiffs noted that they did not believe that an appropriate special education program had been identified or offered by DCPS for the upcoming school year, and that if DCPS refused their request for funding, they reserved their right to seek funding for their unilateral placement of J.S. at Innercept Academy. HOD ¶ 13, A.R. 663 (citing June 15, 2020 Correspondence, A.R. 192).

On June 25, 2020, OSSE held a "change-in-placement" meeting during which OSSE accepted the IEP team's decision that J.S. required a residential placement and agreed to start the location assignment process. HOD ¶ 10, A.R. 661–61; Notes from OSSE Placement Meeting, A.R. 395, ECF No. 12-1. At the meeting, J.S.'s mother reported that J.S. would enroll at Innercept Academy on June 29, 2020 and requested that OSSE consider Innercept Academy for J.S.'s

4

location placement.  HOD ¶ 10, A.R. 662; Notes from OSSE Placement Meeting, A.R. 395–96. OSSE advised Plaintiffs that they must exhaust all programs on the OSSE-approved nonpublic school list.  HOD ¶ 10; Notes from OSSE Placement Meeting, A.R. 396.

After the "change-in-placement" meeting, OSSE made referrals to residential programs on its list of approved schools.  HOD ¶ 11, A.R. 662.  On July 17, 2021, OSSE advised Plaintiffs that one of these schools, the Hughes Center, had accepted J.S. for enrollment.  HOD ¶ 11, A.R. 662. OSSE also explained that the Hughes Center had a waitlist due to protocols implemented in response to the COVID-19 pandemic, which would delay J.S.'s ability to enroll by 12-14 weeks. HOD ¶ 11, A.R. 662. (citing July 17, 2020 Email from Drew Yee, A.R. 398, ECF No. 12-1).  OSSE also notified Plaintiffs that it would issue a Notice of Location Assignment for J.S. to attend the Hughes Center.  HOD ¶ 11; *see* Notice of Location Assignment, July 17, 2020, A.R. 402, ECF No. 12-1.

The Hughes Center is located in Danville, Virginia and offers "specialized residential treatment services for individuals "who have been diagnosed with an Intellectual Disability and/or Autism Spectrum Disorder, and who are experiencing significant social and behavioral difficulties within the home, school or community environments."  The Hughes Center, Residential Treatment, A.R. 510, ECF No. 12-1.  Based on testimony provided during the due process hearing, the Hearing Officer noted that approximately one-half of the students in the residential program at the Hughes Center are "intellectually disabled," but that approximately 10 out of 20 students at the high school level are "on the diploma track" and none of those students has an intellectual disability.  HOD ¶ 17, A.R. 665–66.

On July 30, 2020, Plaintiffs conveyed to OSSE concerns regarding its proposal to place J.S. at the Hughes Center.  HOD ¶ 14, A.R. 663; *see also* July 30, 2020 Email from Meghan

Probert, A.R. 406–07, ECF No. 12-1. First, J.S.'s mother believed that the Hughes Center would not be a good fit for J.S. because she learned that many of the students had an Intellectual Disability Diagnosis or were nonverbal. HOD ¶ 14, A.R. 663; *see also* July 30, 2020 Email from Meghan Probert, A.R. 406–07. Second, J.S.'s parents were concerned about the Hughes Center's waitlist. HOD ¶ 14, A.R. 663; *see also* July 30, 2020 Email from Meghan Probert, A.R. 406–07. J.S.'s parents, through their counsel, again requested that J.S. be referred to Innercept, which they believed to be a more appropriate placement. HOD ¶ 14, A.R. 663–64. On the same day, OSSE responded that although the Hughes Center does serve students with Intellectual Disabilities, it also serves students diagnosed with Autism, and the admissions team at the Hughes Center agreed that its program could meet J.S.'s needs. HOD ¶ 15, A.R. 664; July 30, 2020 Email from Drew Yee (OSSE), A.R. 412–13, ECF No. 12-1. OSSE also advised Plaintiffs that DCPS should discuss with J.S.'s IEP team providing "comparable services" for J.S. pending enrollment at the Hughes Center. HOD ¶ 15, A.R. 664; July 30, 2020 Email from Drew Yee (OSSE), A.R. 412–13.

On August 21, 2020, Plaintiffs filed an administrative due process complaint alleging that OSSE denied J.S. a FAPE by failing to offer an appropriate residential placement for the 2020–2021 school year. Due Process Compl. at 1, A.R. 8, ECF No. 10-2. Plaintiffs sought reimbursement for tuition and related costs paid to Innercept Academy since June 29, 2020 and prospective funding and placement at Innercept Academy through the end of the 2020–2021 school year. Due Process Compl. at 7, A.R. 14.

A due process hearing before a Hearing Officer was held on October 28 and 20 and November 6, 2020. HOD at 2, A.R. 656. The Hearing Officer issued a determination on November 17, 2020. *See* HOD, A.R. 655. The Hearing Officer found that at the time OSSE made its location assignment for J.S. on July 17, 2020, the Hughes Center could fulfill the requirements

set forth in J.S.'s IEP and therefore it was "an appropriate placement for [J.S.]."  HOD at 26–27, A.R. 680–81.

However, the Hearing Officer also concluded that OSSE had failed to show that it "took all reasonable steps to overcome the obstacles which delayed prompt implementation of [J.S.'s] residential placement."  HOD at 31, A.R. 685.  The Hearing Officer, therefore, found that OSSE's "failure to provide a residential placement for [J.S.] near the start of the 2020-2021 school year was a denial of FAPE."  HOD at 31, A.R. 685.  Having concluded that OSSE denied J.S. a FAPE by "failing to implement" J.S.'s IEP requirement for a residential placement at the beginning of the 2020–2021 school year, the Hearing Office next considered whether Plaintiffs' unilateral placement of J.S. at Innercept Academy was "reasonably calculated" to enable J.S. to "make progress appropriate in light of [J.S.'s] very challenging circumstances," allowing them to seek reimbursement for tuition and fees.  HOD at 34, A.R. 688.  The Hearing Officer granted Plaintiffs reimbursement for the first semester of the 2020–2021 school year, but denied reimbursement for the summer of 2020 because J.S.'s IEP did not provide for extended school year services.  HOD at 37, A.R. 691.

Plaintiffs also requested that the Hearing Officer order OSSE to fund J.S.'s continued placement at Innercept Academy for the remainder of the 2020–2021 school year.  *See* Due Process Compl. at 7, A.R. 14.  The Hearing Officer denied this request for prospective placement and funding, noting that Innercept Academy "cannot fulfill [J.S.'s] IEP."  HOD at 38, A.R. 692.  The Hearing Officer noted, for example, that J.S.'s IEP provides for 26.5 hours of Specialized Instructive Services, but Innercept Academy provides only 17.5 of school per week and offers no special education services taught by special education teachers.  HOD at 38, A.R. 692.  In contrast, the Hughes Center offer 27.5 hours of instruction per week and employs a psychiatrist on its staff.

7

HOD ¶¶ 19–20, A.R. 666–67.  The Hughes Center also employs licensed therapists who meet with each student twice per week and provide weekly family therapy and family engagement. HOD ¶ 20, A.R. 667; *id.* at 24, A.R. 678.  Accordingly, the Hearing Officer concluded that OSSE had demonstrated that its location assignment (the Hughes Center) could fulfill the requirements set forth in the May 2020 IEP and therefore was an "appropriate placement" for J.S.  HOD at 26–27, A.R. 680–81.  The Hearing Officer ordered OSSE to fund J.S.'s placement at Innercept Academy through the end of DCPS's term on January 29, 2021 "[i]n order not to unduly disrupt [J.S.'s] education and therapy," but not beyond that date.  HOD at 38–39, A.R. 692–93.

Finally, the Hearing Officer noted that his decision regarding J.S.'s prospective placement for the remainder of the 2020–2021 school year was "without prejudice as to any decision by OSSE, with the concurrence of [Plaintiffs] and [J.S.'s] IEP team, to further extend [J.S.'s] placement at [Innercept Academy]." HOD at 38–39, A.R. 692–93.

Plaintiffs indicate that they attempted to contact DCPS and OSSE in December 2020 and January 2021 to schedule an IEP meeting to discuss J.S.'s continued placement at Innercept Academy, but no meeting has taken place.  Pls.' Mot. at 10; *see also* Pls.' Mot. Exs. 2, 9-3. It is the District's position that neither DCPS nor OSSE was required to convene such a meeting after the Hearing Officer's determination.  Def.'s Opp'n at 7–8.  On January 26, 2021, OSSE notified Plaintiffs' counsel that the "Hughes Center is still anticipating a start date for [J.S.] in the next week or so.  The exact date will depend on the completion [of] admission[s] paperwork."  Pls.' Mot. Ex. 2,  Jan. 26, 2021 Email from Katie Reda (OSSE), ECF No. 9-3.  On February 11, 2021, OSSE notified Plaintiffs indicating that the Hughes Center "has not received any requested admissions information."  Feb. 11, 2021 Email from Katie Reda (OSSE), Def.'s Opp'n Ex. 2, ECF No. 15-2.  J.S. continues to attend Innercept Academy.

### C. Procedural Background

Plaintiffs filed their Complaint in this action on February 1, 2021, seeking review of the Hearing Officer's conclusion that OSSE's proposed placement of J.S. at the Hughes Center was appropriate and that OSSE was not required to fund J.S.'s placement at Innercept Academy for the summer of 2020 and for the second half of the 2020–2021 school year. *See* Compl., ECF No. 1.

On March 16, 2021, Plaintiffs filed a [9] Motion for Preliminary Injunction, seeking injunctive relief under IDEA's "stay-put" provision, 20 U.S.C. § 1415(j). That motion is now fully briefed and ripe for the Court's consideration.

## II. DISCUSSION

The IDEA provides that "during the pendency of any proceedings conducted pursuant to [Section 1415], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]" § 1415(j). Commonly referred to as the "stay-put provision," this section requires the educational agency to maintain a disabled child in his "current educational placement" through both administrative and judicial proceedings, including an appeal from an administrative decision following a due process hearing. 34 C.F.R. § 300.518(a). The purpose of the stay-put injunction is to prevent educational authorities from unilaterally moving a child from his or her current placement. *Alston*, 439 F.Supp.2d at 88 (citing *Honig v. Doe*, 484 U.S. 305, 306 (1988)). A parent can invoke the stay-put provision to request injunctive relief when a school system proposes a "fundamental change in, or elimination of, a basic element of the [then-current educational placement]." *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984). Maintenance of a child's current placement includes full payment for the program in which the student is placed, and a failure by the school district to fund a child's current educational placement constitutes grounds for stay-put injunctive

relief. *See, e.g.*, *Petties v. Dist. of Columbia*, 881 F. Supp. 63, 66 (D.D.C. 1995) (holding that "fail[ure] to make payments in whole or in part or cutting off funds for special education programs amounts to a unilateral change in students' placements, which is prohibited by the IDEA").

The traditional four-part standard for injunctive relief does not apply to requests for stay-put relief pursuant to the IDEA, which directs that the "child *shall remain* in [his] then-current educational placement." § 1415(j) (emphasis added). The Supreme Court has recognized that the language of this pendency provision is "unequivocal" and "means what it says." *Honig*, 484 U.S. at 323, 325. Thus, "courts have consistently interpreted the stay put provision to be an automatic injunction." *Laster v. Dist. of Columbia*, 439 F. Supp. 2d 93, 98–99 (D.D.C. 2006) (citing cases); *see also Andersen by Andersen v. Dist. of Columbia*, 877 F.2d 1018, 1020 (D.C. Cir. 1989) (noting that if the stay-put provision applies, "injunctive relief is available without the traditional showing of irreparable harm"); *Johnson v. Dist. of Columbia*, 839 F. Supp. 2d 173 (D.D.C. 2012) ("The stay put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy.") (citing *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist.*, 400 F.3d 508, 511 (7th Cir. 2005)). The party requesting relief under the stay-put provision must show that (1) proceedings under the IDEA are pending; and (2) prevention of a change in the "then-current educational placement" of the child is sought. *K.W. v. Dist. of Columbia*, 385 F. Supp. 3d 29, 37 (D.D.C. 2019) (internal citations omitted). Upon meeting this two-part inquiry, the movant is presumptively entitled to a stay-put injunction in favor of the child's current placement. *Eley v. Dist. of Columbia*, 47 F. Supp. 3d 1, 8 (D.D.C. 2014).

Here, there is no dispute that IDEA proceedings are pending. Accordingly, the question is whether Plaintiffs' motion seeks to prevent a "change" in J.S.'s "current educational placement." Because the Court finds that Plaintiffs have not demonstrated that Innercept Academy is J.S.'s

"current educational placement," the Court concludes that the District's decision not to fund J.S.'s placement at Innercept Academy for the second half of the 2020–2021 school year does not constitute a "change" in J.S.'s placement. Stay-put relief, therefore, is not warranted.

Although the IDEA does not define "current educational placement," courts "have explained that a child's educational placement falls somewhere between the physical school attended by a child and the abstract goals of a child's IEP." *Johnson*, 839 F. Supp. 2d at 176–77 (internal citations and quotation marks omitted). Typically, "the dispositive factor in deciding a child's 'current educational placement' should be the IEP actually functioning when the 'stay put' is invoked." *Id.* at 177 (internal citations and quotation marks omitted). Alternatively, the state and parents may "otherwise agree" to another placement, which then becomes subject to the stay-put provision. *See* § 1415(j). In *School Committee of the Town of Burlington v. Department of Education of the Commonwealth of Massachusetts*, the Supreme Court found that an administrative decision in favor of a private school chosen by the parents "would seem to constitute an agreement by the State to the change of placement," thereby making the private school the current placement. 471 U.S. at 372. This holding is codified at 34 C.F.R. § 300.518(d), which states that "[i]f a hearing officer in a due process hearing ... agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents." 34 C.F.R. § 300.518(d); *see also Johnson*, 839 F. Supp. 2d at 177 ("[T]he HOD finding functions as an "agreement" for purposes of the stay-put provision between the parties [.]") (citing cases).

Here, Plaintiffs argue that Innercept Academy is J.S.'s "current educational placement," contending that the Hearing Officer's order requiring the District to reimburse Plaintiffs for J.S.'s placement there for the first half of the 2020–2021 school year makes Innercept Academy the "last

agreed upon placement" between OSSE and Plaintiffs. Pls.' Mot. at 10. In support of this argument, Plaintiffs rely on two cases in which the courts concluded that, pending parents' challenges to the substance of the student's IEP, the placement deemed appropriate by a Hearing Officer was the student's "current educational placement" for purposes of the stay-put provision. First, Plaintiffs discuss *District of Columbia v. Vinyard*, in which the Court agreed with the parents that in the absence of a "functioning IEP," the Hearing Officer's "unequivocal holding in favor" of the parents in placing the student at a particular school constituted "an agreement as to [the student's] current educational placement for the limited purposes of stay put relief." 901 F. Supp. 2d at 86; *see* Pls.' Mot. at 12. Unlike that case, however, Plaintiffs here do not challenge the *substance* of the May 2020 IEP, but rather the appropriate *location* to implement the services prescribed therein. *See* Compl. ¶¶ 67–73; HOD at 26, A.R. 680 ("The adequacy of the services in the May 14, 2020 IEP is not at issue in this case."). Therefore, unlike *Vinyard*, there is an agreed-upon IEP in place which the Court must consider in determining J.S.'s "current educational placement." *See Vinyard*, 901 F. Supp. 2d at 79 ("Typically, the dispositive factor in deciding a child's current educational placement should be the individualized education program actually functioning when the stay-put is invoked." (citation omitted)); *see also D.K. ex rel. Klein v. Dist. of Columbia*, 962 F. Supp. 2d 227, 234 (D.D.C. 2013) ("The physical school location alone does not constitute an 'educational placement.'").

Plaintiffs next rely on *A.D. v. District of Columbia*, No. 20-cv-2765 (BAH), 2021 WL 354175 (D.D.C. Feb. 2, 2021), contending that in that case the court "rejected the school system's argument that because the [HOD] only granted reimbursement for the first half of the school year," the private school attended by the student was "an interim placement" that did not entitle the student to stay-put protection. Pls.' Mot. at 13–14. But again, the parents in that case challenged

both the substance of the student's IEP and the proposed school placement, the implementation of which would have reduced the specialized education and psychological services provided to the student and required the student to transfer schools. *Id.* at *5. The court reasoned that it would undermine the purpose of the stay-put provision to require the student to transfer schools while a challenge to the *IEP* was pending in the event the IEP was found to be "inappropriate and inadequate." *Id.*

In contrast, Plaintiffs here agreed to the May 2020 IEP, but dispute that the Hughes Center is the appropriate school for J.S. Plaintiffs do not address the authority in this jurisdiction indicating that a student's IEP is typically the dispositive factor in determining the student's "current educational placement." *See, e.g.*, *Johnson*, 839 F. Supp. 2d at 177; *Wimbish v. Dist. of Columbia*, 153 F. Supp. 3d 4, 11 (D.D.C. 2015). In *Johnson v. District of Columbia*, for example, this Court concluded that the operative IEP agreed upon between the parties was the student's "current educational placement." 839 F. Supp. 2d at 178. In that case, the Court denied the parents' request for a stay-put order, concluding that "[s]ince there is no challenge to the IEP itself, until the Hearing Officer indicates otherwise, the District is free to place [the student] at any facility that it determines can provide the services required by the [operative] IEP." *Id.* As in *Johnson*, the dispute here is which physical location can implement the services provided in the May 2020 IEP, not whether the IEP itself appropriately addresses J.S.'s educational needs. Accordingly, the Court adopts the same reasoning offered in that case: absent a challenge to the IEP itself, the District may place J.S. at "any facility that it determines can provide the services required" by the May 2020 IEP. *Id.*

Here, the Hearing Officer specifically declined to order J.S.'s continued placement at Innercept Academy for the second half of the 2020–2021 school year because "it *cannot* fulfill

13

[J.S.'s IEP]. HOD at 38, A.R. 692 (emphasis added). Notably, the Hearing Officer found that Innercept Academy provides "17.5 hours of school per week" and "offers no special education services taught by special education teachers," whereas the IEP provides for J.S. to receive "26 hours per week of Specialized Instruction Services." HOD at 38, A.R. 692. In contrast, the Hearing Officer concluded that the Hughes Center "could fulfill the requirements set forth in the Student's DCPS IEP." HOD at 26, A.R. 680. Accordingly, consistent with other courts in this jurisdiction, the Court shall decline to grant Plaintiffs relief under the stay-put provision to maintain J.S.'s placement at a school that cannot implement the IEP agreed upon by the parties. *See, e.g.*, *Johnson*, 839 F. Supp. 2d at 177–180; *D.K. ex rel. Klein*, 962 F. Supp. 2d at 233–34.

In addition, the Hearing Officer's order requiring the District to reimburse Plaintiffs for the tuition and expenses associated with J.S.'s enrollment at Innercept Academy was based primarily on the District's inability to "make a suitable placement for [J.S] in time for the start of the 2020–2021 school year because the only OSSE-approved program which admitted Student did not expect an opening until at least the second week in October [2020]." HOD at 37, A.R. 691. But based on the record before the Court, the Hughes Center had availability for J.S. to enroll for the second half of the school year, but Plaintiffs declined to enroll J.S. there. *See* Pls.' Mot. Ex. 2, Jan. 26, 2021 Email from Katie Reda (OSSE).

As a final point, Plaintiffs contend that the District failed to convene a meeting after the HOD was issued to "discuss J.S.'s potential transfer" to the Hughes Center, "as suggested by the Hearing Officer." Pls.' Reply at 10. Plaintiffs refer to the Hearing Officer's decision to deny Plaintiffs' request to fund J.S.'s prospective attendance at Innercept Academy for the second half of the 2020–2021 school year "without prejudice to any decision by OSSE, with the concurrence of [Plaintiffs] and [J.S.'s] DCPS team, to further extend [J.S.'s] placement at Innercept Academy."

HOD at 30, A.R. 693. Plaintiffs contend that this language "provided explicit guidance that the parties should also consider whether to extend J.S.'s placement at Innercept[.]" Pls.' Mot. at 18. Plaintiffs, however, do not cite any legal authority for the proposition that the District is required to convene a meeting with parents in such circumstances. Accordingly, the Court concludes that the District's decision not to hold a meeting with Plaintiffs following the HOD has no effect on its decision to deny Plaintiffs' request for stay-put relief.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is DENIED. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge